Timothy M. Bechtold
**BECHTOLD LAW FIRM, PLLC**
P.O. Box 7051
Missoula, Montana 59807
Phone: (406) 721-1435
tim@bechtoldlaw.net

[Additional counsel appear on signature page]

Attorneys for Plaintiffs &
the Hourly Employees

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| ALEXANDER BERTRAM and STEVEN DAMMANN, Individually and For Others Similarly Situated <br><br> v. <br><br> STILLWATER MINING COMPANY d/b/a SIBANYE-STILLWATER | **Case No.** CV-25-138-BLG-TJC <br><br> **COLLECTIVE ACTION COMPLAINT** <br><br> FLSA Collective Action <br> Jury Trial Demanded |

### SUMMARY

1.      Alexander Bertram (Bertram) and Steven Dammann (Dammann) (collectively Plaintiffs) bring this collective action to recover unpaid wages and other damages from Stillwater Mining Company d/b/a Sibanye-Stillwater (Stillwater).

2.      Stillwater employed Plaintiffs as its Hourly Employees (defined below).

3.      Plaintiffs and the other Hourly Employees regularly work more than 40 hours in a week.

4.      Stillwater pays them by the hour.

5.      But Stillwater does not pay Plaintiffs and the other Hourly Employees for all their hours worked, including overtime hours.

6.      Instead, Stillwater requires Plaintiffs and the other Hourly Employees to put on safety gear and equipment, as well as participate in meetings, fundamentally necessary to and intertwined with their job duties, while on Stillwater's premises, "off the clock."

7.      Likewise, Stillwater requires Plaintiffs and the other Hourly Employees to meet with employees coming on shift, while still on Stillwater's premises, "off the clock" (¶¶ 6-7 together, Stillwater's "pre/post shift off the clock policy").

8.      Additionally, Stillwater rounds Plaintiffs' and the other Hourly Employees' hours worked to 9 or 11.5 hours a workday even if they actually work more (Stillwater's "rounding policy").

9.      Additionally, Stillwater pays Plaintiffs and the other Hourly Employees non-discretionary bonuses, including production and safety bonuses, that Stillwater excludes from their regular rates of pay for overtime purposes. (Stillwater's "bonus pay scheme").

10.     Finally, Stillwater pays Plaintiffs and the other Hourly Employees accrued but unused sick leave as a lump sum payment to encourage good attendance by the Hourly Employees (Stillwater's "sick leave pay scheme").

11.     Stillwater's pre/post shift off the clock policy, rounding policy, bonus pay scheme, sick leave pay scheme violate the Fair Labor Standards Act (FLSA) by failing to compensate Plaintiffs and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for hours worked in excess of 40 in a workweek.

## Jurisdiction & Venue

12.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

13.     This Court has general personal jurisdiction over Stillwater because it maintains its principal place of business Montana.

14.     Venue is proper because Stillwater maintains its principal place of business in Columbus, Montana, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## Parties

15.     Stillwater employed Bertram as an underground surveyor from approximately September 2020 through May 2025 in its East Boulder Mine.

16.     Stillwater has employed Dammann as an operator 1 since approximately March 2021 in its East Boulder Mine.

17.    Throughout their employment, Stillwater subjected Plaintiffs to its pre/post shift off the clock policy, rounding policy, bonus pay scheme, and sick leave pay scheme.

18.    Bertram's written consent is attached as **Exhibit 1**.

19.    Dammann's written consent is attached as **Exhibit 2**.

20.    Plaintiffs bring this collective action on behalf of themselves and similarly situated Stillwater employees.

21.    The putative FLSA collective is defined as:

> **All hourly Stillwater employees who worked during the last three years through final resolution of this action (the "Hourly Employees").**

22.    Stillwater is a Delaware corporation with its principal place of business in Columbus, Montana.

23.    Stillwater may be served with process through its registered agent:

**Corporation Service Company, 26 W. Sixth Ave., Helena, Montana 59624.**

### FLSA COVERAGE

24.    At all relevant times, Stillwater was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

25.    At all relevant times, Stillwater was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

26.    At all relevant times, Stillwater was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA

because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, tools, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

27.    At all relevant times, Stillwater had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

28.    At all relevant times, Plaintiffs and the other Hourly Employees were Stillwater's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

29.    At all relevant times, Plaintiffs and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

30. Stillwater operates the "Stillwater West and Stillwater East mines[] and East Boulder mines[, which] are underground mining operations, located near the towns of Nye and McLeod in Montana, US respectively" and employs about 900 employees.[1]

31. To meet its business objectives, Stillwater employs workers, including Plaintiffs and the other Hourly Employees, to extract and process platinum palladium.

---

[1] https://www.sibanyestillwater.com/business/americas/pgm-operations-americas/stillwater-east-boulder/ (last visited October 31, 2025).

32.  For example, Stillwater employed Bertram as an underground surveyor in its East Boulder Mine from approximately September 2020 to May 2025.

33.  Bertram's job duties included creating and updating infrastructure and excavation mapping throughout the mine.

34.  And Stillwater has employed Dammann as an operator 1 since approximately March 2021 in its East Boulder Mine.

35.  Dammann's job duties include operating and monitoring underground backfill plants, as well as delivering supplies underground.

36.  Plaintiffs' job duties likewise include donning required safety gear and meeting with employees coming on or off shift, on Stillwater's premises, "off the clock."

37.  Throughout their employment, Plaintiffs have recorded their "on the clock" hours using the timekeeping system selected and controlled by Stillwater.

38.  Thus, Stillwater's records reflect the number of "on the clock" hours Plaintiffs record working each week.

39.  Throughout their employment, Plaintiffs have regularly worked more than 40 hours in a workweek.

40.  Indeed, throughout his employment, Bertram typically worked approximately 9 hours a day and 4 to 5 days a week (36 to 45 hours a workweek) "on the clock."

41.    And Dammann works approximately 11.5 hours a day and 4 to 5 days a week (46 to 57.5 hours a workweek).

42.    But throughout their employment, Stillwater has not paid Plaintiffs for all hours worked, including overtime hours.

43.    Instead, Stillwater has subjected Plaintiffs to its pre/post shift off the clock policy.

44.    Specifically, Stillwater requires Plaintiffs to put on safety gear (including hard hat, head lamp, fire retardant/reflective gear, ear protection, steel toed boots, safety glasses, gloves, cut resistant arm covers, respirator, self-contained self-rescuer, and tracker) fundamentally necessary given the nature of their underground mining duties and meet with counterparts coming off shift regarding the day's work, necessarily on Stillwater's premises, "off the clock," and without compensation.

45.    This takes Plaintiffs approximately 25 minutes each workday.

46.    Plaintiffs could not perform their job duties in accordance with Stillwater's policies, procedures, and expectations without donning this safety gear and meeting with their colleagues coming off shift.

47.    By way of simple example, without a headlamp, the darkness intrinsic to underground mining work would materially impede Plaintiffs' ability to complete their job duties.

48.    And much of the gear Plaintiffs utilize is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*; 30 C.F.R. § 57, *et seq*.

49. The donning of safety gear and meeting with colleagues were therefore integral and indispensable work duties for Plaintiffs necessary to safely and effectively complete their underground duties for Stillwater.

50. Likewise, Stillwater requires Plaintiffs to wait for and meet with employees coming on shift regarding the day's work, while still on Stillwater's premises "off the clock" and without compensation.

51. This takes Plaintiffs approximately 15 minutes each workday.

52. Plaintiffs could not perform their job duties in accordance with Stillwater's policies, procedures, and expectations without meeting with their colleagues to convey updates regarding the work to be undertaken and completed.

53. These "turnover" meetings each day are therefore an integral and indispensable work duty for Plaintiffs, necessary to efficiently completing their jobs in accordance with Stillwater's expectations.

54. But under its pre/post shift off the clock policy, Stillwater does not compensate them for the same.

55. And under its rounding policy, Stillwater rounded Plaintiffs' hours worked to either 9 or 11.5 each day, even when they work more.

56. Thus, because of its pre/post shift off the clock policy and rounding policy, Stillwater failed to pay Plaintiffs overtime wages for all hours worked in excess of 40 hours in a workweek.

57.     Plaintiffs and the other Hourly Employees perform their jobs under Stillwater's supervision and use materials, equipment, and technology Stillwater approves and supplies.

58.     Stillwater requires Plaintiffs and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

59.     Plaintiffs' and the other Hourly Employees' work must strictly adhere to the uniform standards put in place by Stillwater.

60.     At the end of each pay period, Plaintiffs and the other Hourly Employees receive wages from Stillwater that are determined by common systems and methods that Stillwater selects and controls.

61.     Like Plaintiffs, the other Hourly Employees typically record working approximately 9 or 11.5 hours a day for 4 to 5 days a week (36 to 57.5 hours a workweek) "on the clock."

62.     But just as with Plaintiffs, Stillwater fails to pay them for all their hours worked.

63.     Indeed, Stillwater subjects the other Hourly Employees to the same or similar pre/post shift off the clock policy it imposes on Plaintiffs.

64.     Specifically, just as with Plaintiffs, Stillwater requires the other Hourly Employees to don safety gear (including hard hat, head lamp, fire retardant/reflective gear, ear plugs, steel toed boots, safety glasses, gloves, cut resistant arm covers,

respirator, self-contained self-rescuer, and tracker) fundamentally necessary given the nature of their mining duties and meet with colleagues coming off shift about the day's work, on Stillwater's premises all "off the clock" and without compensation.

65.    And, like Plaintiffs, Stillwater requires the other Hourly Employees to wait for, meet with, and update colleagues coming on shift about the day's work, after their own shifts, still on Stillwater's premises, "off the clock," and without compensation.

66.    And like Plaintiffs, much of the gear the other Hourly Employees must utilize is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*; 30 C.F.R. § 57, *et seq*.

67.    But, like Plaintiffs, Stillwater forces the other Hourly Employees to perform this compensable work "off the clock" before and after their shifts.

68.    Thus, just as with Plaintiffs, Stillwater does not pay the other Hourly Employees for this integral and indispensable work they are required to perform "off the clock," including during workweeks they work over 40 hours.

69.    And, just as with Plaintiffs, these job duties take the other Hourly Employees approximately 40 minutes to complete each workday.

70.    And as with Plaintiffs, Stillwater rounds the other Hourly Employees' hours worked to 9 or 11.5 each workday, even when they work more.

71.    Stillwater fails to exercise its duty as the Hourly Employees' employer to ensure they are not performing work "off the clock" on its premises.

72.    And Stillwater knows, should know, or recklessly disregards whether Plaintiffs and the other Hourly Employees routinely perform integral and indispensable work "off the clock" and without compensation, before and after their scheduled shifts, for Stillwater's primary benefit.

73.    Thus, Stillwater requests, suffers, or permits Plaintiffs and the other Hourly Employees to work "off the clock," without compensation, before and after their shifts, on its premises.

74.    Despite accepting the benefits, Stillwater does not pay Plaintiffs and the other Hourly Employees for the compensable work they perform "off the clock."

75.    Thus, under Stillwater's pre/post shift off the clock policy and rounding policy, Plaintiffs and the other Hourly Employees are denied overtime wages for the compensable work they perform "off the clock" before and after their scheduled shifts, during workweeks in which they work more than 40 hours.

76.    And throughout their employment, Stillwater has not paid Plaintiffs and the other Hourly Employees at the required premium rates for all hours worked after 40 in a workweek.

77.    Instead, Stillwater pays Plaintiffs and the other Hourly Employees under its bonus pay scheme.

78.    Specifically, Stillwater agrees to pay and subsequently pays Plaintiffs and the other Hourly Employees non-discretionary bonuses, including safety bonuses and production bonuses, based on the Hourly employees fulfilling all of its criteria.

79. But Stillwater excludes these non-discretionary bonuses from their regular rates of pay for overtime purposes.

80. For example, during the pay period ending December 31, 2024, Stillwater paid Bertam a $2,300 labeled as "OtherComp":

| Earnings | | | | |
|---|---|---|---|---|
| Description | Hrs/Units | Rate | Current Amt | Year To Date |
| Regular Pay | 49.00 | 36.547 | 1,790.79 | 60,569.40 |
| Vacation Pay | 8.00 | 36.547 | 292.38 | 4,350.25 |
| Sick Day | 13.00 | 36.547 | 475.11 | 1,461.87 |
| Holiday | 16.00 | 36.547 | 584.76 | 2,652.24 |
| Excused Pay | | | | 328.92 |
| STD 100% | | | | 2,485.18 |
| Overtime | 5.00 | 54.821 | 274.10 | 4,662.53 |
| Hol Worked | | | | 493.38 |
| Other Comp | | | 2,300.00 | 6,900.00 |
| QRTLY STIP | | | | 5,130.33 |
| Sick Pay Out | | | | 103.75 |
| Pr Yr Hol PO | | | | 286.64 |
| Berevmnt Pay | | | | 877.13 |
| Retropay-ST | | | | 286.42 |
| Retropay-OT | | | | 26.21 |
| Net Pay Adj. | | | | 2,326.32 |
| Excess Life | | | | 98.40 |
| 401K Match | | | 273.37 | 6,278.42 |
| Vac Avail | | | | 200.41 |
| *Vacation Taken/Available* | 120.00 | | | |

81. But Stillwater excluded this non-discretionary bonus from Bertram's regular rate of pay for overtime purposes.

82. During the pay period ending September 6, 2025, Stillwater paid Dammann a $780.35 "Miner Incentive" production/safety bonus it excluded from his regular rate of pay:

| | 8/24/2025 - 9/6/2025 | | |
|---|---|---|---|
| | Hours/Units | Rate | Amount |
| **Earnings** | **88.50** | | **$4,260.90** |
| Regular Pay | 34.50 | 37.3300 | $1,287.89 |
| Regular Pay | 20.50 | 38.0800 | $780.64 |
| Excused Pay | 17.00 | 37.3300 | $634.61 |
| Excused Pay | 6.00 | 55.9950 | $335.97 |
| Boot Allowance | | | |
| Miner Incentive | | | $780.35 |
| Holiday | 8.00 | 37.3300 | $298.64 |
| Sick Pay Out | | | |
| Holiday Worked | | | |
| Hourly Sick Pay | | | |
| Personal Hol | | | |
| Vaca No Notice | | | |
| Vac Prior Year | | | |
| Vacation Pay | | | |
| Overtime | 2.50 | 57.1200 | $142.80 |
| Ex Sick No Pay | | | |
| Hol Extension | | | |

83.     Thus, under Stillwater's bonus pay scheme, it does not pay Plaintiffs and the other Hourly Employees overtime wages at the required rates—based on all remuneration—for all hours they work in excess of 40 in a workweek.

84.     And Stillwater pays Plaintiffs and the other Hourly Employees under its sick leave pay scheme.

85.     Specifically, Stillwater pays out their accrued but unused sick leave if Plaintiffs and the other Hourly Employees achieve sufficiently good attendance to incentivize and award such good attendance.

86.     For example, during the pay period ending March 22, 2025, Stillwater paid Dammann a "Sick Pay Out" of $5,050.80:

|  | Current 3/9/2025 - 3/22/2025 | | |
|---|---|---|---|
|  | Hours/Units | Rate | Amount |
| **Earnings** | **80.50** |  | **$8,274.15** |
| Regular Pay | 51.50 | 36.6000 | $1,884.90 |
| Regular Pay | 23.00 | 37.3500 | $859.05 |
| Boot Allowance |  |  | $150.00 |
| Miner Incentive |  |  |  |
| Holiday |  |  |  |
| Sick Pay Out |  |  | $5,050.80 |
| Hourly Sick Pay |  |  |  |
| Vaca No Notice |  |  |  |
| Vac Prior Year |  |  |  |
| Vacation Pay |  |  |  |
| Overtime | 6.00 | 54.9000 | $329.40 |
| Ex Sick No Pay |  |  |  |

87.     But, under its sick leave pay scheme, Stillwater excluded this Sick Pay Out, which amounted to an attendance bonus, from Dammann's regular rate of pay for overtime purposes.

88.     Thus, under its sick leave pay scheme, Stillwater does not pay the Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration— for all hours worked in excess of 40 in a workweek.

89.     Plaintiffs and the other Hourly Employees are thus subject to the same or similar unlawful policies—Stillwater's pre/post shift off the clock policy, rounding policy, bonus pay scheme, and sick leave pay scheme—for similar work, in willful violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

90.    Plaintiffs bring their claims as a collective action under Section 216(b) of the FLSA on behalf of themselves and the other Hourly Employees.

91.    Like Plaintiffs, the other Hourly Employees are victimized by Stillwater's pre/post shift off the clock policy, rounding policy, bonus pay scheme, and/or sick leave pay scheme.

92.    Other Hourly Employees worked with Plaintiffs and indicated they were paid in the same manner, performed similar work, and were subject to Stillwater's pre/post shift off the clock policy, rounding policy, bonus pay scheme, and/or sick leave pay scheme.

93.    Based on their experience with Stillwater, Plaintiffs are aware Stillwater's pre/post shift off the clock policy, rounding policy, bonus pay scheme, and sick leave pay scheme were imposed on other Hourly Employees.

94.    The Hourly Employees are similarly situated in the most relevant respects.

95.    Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required premium rates for all overtime hours worked.

96.    Therefore, the specific job titles or locations of the Hourly Employees do not prevent collective treatment.

97.     Rather, Stillwater's pre/post shift off the clock policy, rounding policy, bonus pay scheme, and sick leave pay scheme render the Hourly Employees similarly situated for the purpose of determining their right to overtime wages at the required rate for all overtime hours worked.

98.     Stillwater's records reflect the number of "on the clock" hours the Hourly Employees recorded working each week.

99.     Stillwater's records also show Stillwater paid the Hourly Employees non-discretionary bonuses and lump sum sick leave payouts.

100.    Stillwater's records show it failed to include these non-discretionary bonuses and lump sum payments (attendance bonuses) in their regular rates of pay.

101.    The back wages owed to the Hourly Employees can therefore be calculated using the same formula applied to the same records.

102.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Stillwater's records without detracting from the common nucleus of liability facts.

103.    Therefore, the issue of damages does not preclude collective treatment.

104.    Plaintiffs' experiences are therefore typical of the experiences of the other Hourly Employees.

105.    Plaintiffs have no interest contrary to, or in conflict with, the other Hourly Employees that would prevent collective treatment.

106.    Plaintiffs have an interest in obtaining the unpaid wages owed to the other Hourly Employees under federal law.

107.    Plaintiffs and their counsel will fairly and adequately protect the interests of the Hourly Employees.

108.    Plaintiffs retained counsel with significant experience handling complex collective action litigation.

109.    Absent this collective action, many Hourly Employees will not obtain redress for their injuries, and Stillwater will reap the unjust benefits of violating the FLSA.

110.    Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

111.    Indeed, the multiplicity of actions would create hardship for the Hourly Employees, the Court, and Stillwater.

112.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

113.    The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

114.    Among the common questions of law and fact are:

    a.    Whether Stillwater imposed its pre/post shift off the clock policy on the Hourly Employees;

b.      Whether Stillwater's pre/post shift off the clock policy deprived the Hourly Employees of overtime compensation for overtime hours worked;

c.      Whether Stillwater paid the Hourly Employees non-discretionary bonuses and/or lump sum sick leave pay outs;

d.      Whether Stillwater engaged in a policy or practice of failing to include non-discretionary bonuses and/or lump sum sick leave pay outs in the Hourly Employees' regular rates of pay for overtime purposes;

e.      Whether Stillwater failed to pay the Hourly Employees overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked;

f.      Whether Stillwater's decision not to pay the Hourly Employees overtime wages at the required rates—based on all remuneration—for all overtime hours worked was made in good faith; and

g.      Whether Stillwater's violations were willful.

115.    As part of its regular business practices, Stillwater intentionally, willfully, and repeatedly violated the FLSA with respect to the Hourly Employees.

116.    Stillwater's pre/post shift off the clock policy, rounding policy, bonus pay scheme, and sick leave pay scheme deprived Plaintiffs and the other Hourly

Employees of the overtime wages at the required premium rates—based on all remuneration—for overtime hours worked.

117.    There are many similarly situated Hourly Employees who have been denied overtime wages and who would benefit from the issuance of a court supervised notice of this lawsuit and the opportunity to join it.

118.    The Hourly Employees are known to Stillwater, are readily identifiable, and can be located through Stillwater's business and personnel records.

### STILLWATER'S VIOLATIONS WERE WILLFUL

119.    Stillwater knew it employed the Hourly Employees.

120.    Stillwater knew it was subject to the FLSA's overtime provisions.

121.    Stillwater knew the Hourly Employees were its non-exempt employees entitled to overtime pay.

122.    Stillwater knew the FLSA required it to pay non-exempt employees, including the Hourly Employees, overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours over 40 in a workweek.

123.    Stillwater knew each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because their "on the clock" hours were recorded via its timekeeping system.

124.    Stillwater knew it paid the Hourly Employees according to its pre/post shift off the clock policy and rounding policy.

125.   Stillwater knew it had a duty to ensure the Hourly Employees were not performing work "off the clock" (without pay).

126.   Stillwater knew it required the Hourly Employees to don and doff safety gear and participate in production meetings "off the clock."

127.   Stillwater knew it controlled the Hourly Employees' work procedures.

128.   Stillwater knew the Hourly Employees' mandatory "off the clock" work was a fundamental requirement of their jobs with Stillwater.

129.   Stillwater knew the Hourly Employees' mandatory "off the clock" work was an integral and indispensable requirement to their principal job duties with Stillwater.

130.   Stillwater knew the Hourly Employees routinely performed this daily, required "off the clock" work for Stillwater's predominant benefit.

131.   In other words, Stillwater knew the Hourly Employees performed compensable work "off the clock" and without compensation.

132.   Stillwater knew it paid Plaintiffs and the other Hourly Employees non-discretionary safety and production bonuses and lump sum sick leave payouts.

133.   Stillwater knew these non-discretionary bonuses and sick leave payouts were not included in the Hourly Employees' regular rates of pay for overtime purposes.

134.    And Stillwater knew the FLSA required it to pay the Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

135.    Stillwater knew the Hourly Employees regularly worked in excess of 40 hours in a workweek.

136.    Thus, Stillwater knew, should have known, or recklessly disregarded whether it failed to pay the Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all the hours they worked in excess of 40 in a workweek.

137.    Stillwater's failure to pay Plaintiffs and the other Hourly Employees overtime at the required rates—based on all remuneration—for all overtime hours worked was not reasonable, nor was this decision made in good faith.

138.    Stillwater knowingly, willfully, and/or in reckless disregard of the FLSA carried out its pre/post shift off the clock policy, rounding policy, bonus pay scheme, and/or sick leave pay scheme, which deprived the Hourly Employees of overtime wages at the required rates—based on all remuneration—for all hours worked after 40 in a workweek.

## CAUSE OF ACTION
### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

139.    Plaintiffs bring their FLSA claims as a collective action on behalf of themselves and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

140.    Stillwater violated, and is violating, the FLSA by employing non-exempt employees, such as the Hourly Employees, in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

141.    Stillwater's unlawful conduct harmed the Hourly Employees by depriving them of overtime wages they are owed.

142.    Accordingly, Stillwater owes the Hourly Employees the difference between the wages actually paid and the overtime wages actually earned.

143.    Because Stillwater knew, or showed reckless disregard for whether its pre/post shift off the clock policy, rounding policy, bonus pay scheme, and/or sick leave pay scheme violated the FLSA, Stillwater owes the Hourly Employees these wages for at least the past three years.

144.    Stillwater is also liable to the Hourly Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

145.    Finally, the Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## JURY DEMAND

146.    Plaintiffs demand a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Plaintiffs, individually and on behalf of the other Hourly Employees, seek the following relief:

a.      An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing a written notice of consent;

b.      An Order finding Stillwater liable to Plaintiffs and the other Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

c.      Judgment awarding Plaintiffs and the other Hourly Employees all unpaid wages, liquidated damages, statutory damages, and any and other penalties available under the FLSA;

d.      An Order awarding Plaintiffs and the other Hourly Employees attorneys' fees, costs, and expenses;

e.      An Order awarding pre- and post-judgment interest at the highest applicable rates; and

f.      Such other and further relief as may be necessary and appropriate.

Dated: November 18, 2025     Respectfully submitted,


/s/Timothy M. Bechtold
**BECHTOLD LAW FIRM, PLLC**
P.O. Box 7051
Missoula, Montana 59807
Phone: (406) 721-1435
tim@bechtoldlaw.net

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR PLAINTIFFS & THE HOURLY EMPLOYEES**