IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ALEXANDER BERTRAM and STEVEN DAMMANN, individually and for others similarly situated, | CV 25-138-BLG-DWM |
| Plaintiffs, | ORDER |
| vs. | |
| STILLWATER MINING COMPANY d/b/a SIBANYE-STILLWATER, | |
| Defendant. | |

On November 18, 2025, Plaintiffs Alexander Bertram and Steven Dammann brought this collective action, on behalf of themselves and others similarly situated, against Defendant Stillwater Mining Company d/b/a Sibanye-Stillwater ("Stillwater"), alleging violations of the Fair Labor Standards Act ("FLSA" or the "Act"). (Doc. 1.) Plaintiffs now move for an FLSA conditional certification and issuance of court-authorized notice pursuant to 29 U.S.C. § 216(b). (Doc. 21.) Conditional certification is granted, and court-authorized notice is issued subject to the conditions outlined below.

1

## BACKGROUND

Stillwater operates the following mines in Montana: the Stillwater West mines and the Stillwater East mines in Nye; the East Boulder mines in McLeod; and a mine in Columbus. (Doc. 22 at 7; Doc. 24-1 at ¶ 3.) These mines extract and process platinum palladium. (Doc. 22 at 7.) Bertram and Dammann are the named plaintiffs in this case. Bertram was employed by Stillwater as an underground surveyor from approximately September 2020 to May 2025 in the East Boulder mine. (Doc. 1 at ¶ 15.) His job duties included creating and updating infrastructure and excavation mapping throughout the mine. (*Id.* ¶ 33.) Dammann has been employed by Stillwater as an "operator 1" since approximately March 2021 in the East Bolder mine. (*Id.* ¶ 16.) His job duties include operating and monitoring underground backfill plants and delivering supplies underground. (*Id.* ¶ 35.) The putative FLSA collective action members consist of "[a]ll hourly, non-exempt[1] Stillwater employees who worked at any time during the last three (3) years through the present." (Doc. 21 at 1.) Plaintiffs and putative members of the collective action are each "subject to the same illegal pay policies" maintained by Stillwater. (Doc. 22 at 7.) Plaintiffs allege that they and the putative collective action members were subject to three specific Stillwater policies that violate the

---

[1] Meaning "non-exempt" under the FLSA. *See* 29 U.S.C. § 213 ("Exemptions").

2

FLSA: (1) the bonus and sick leave policy, (2) the pre/post shift off-the-clock policy, and (3) the rounding policy. (*Id.* at 7–10.)

Under the bonus and sick leave policy, hourly non-exempt Stillwater employees who "regularly work in excess of forty (40) hours per workweek . . . receive additional compensation in the form of, *inter alia*, non-discretionary safety bonuses, production bonuses, and accrued but unused sick leave payouts used to incentivize and award good attendance." (*Id.* at 7.) However, Stillwater "fails to properly include the extra compensation in the formula used to calculate [the] overtime rate of pay[,]" meaning these rates "did not appear to include 1.5 times [the] base hourly rate based on all renumeration." (*Id.* at 7–8.)

Under the pre/post shift off-the-clock policy, hourly non-exempt Stillwater employees who "provide mining-related services" are required to "catch a mandatory bus to Stillwater's mining locations[,]" which drops them off "at the mine-site approximately thirty (30) to forty-five (45) minutes before the start of their scheduled shifts." (*Id.* at 8–9.) Upon arrival at the mine, these employees are "required to attend a cross-shift meeting with the outbound shift, dress into mandatory personal protective equipment ('PPE'), and attend a line-out meeting to obtain instructions on the day's tasks and duties (collectively referred to as, the 'Pre-Shift Activities')." (*Id.* at 9 (internal footnote omitted).) At the end of their

scheduled shifts these employees must engage in "Post-Shift Activities," which require "chang[ing] out of their PPE and wash[ing]-up, wait[ing] for the mandatory bus to transport them from the mine, attend[ing] a cross-shift meeting with the oncoming shift, and rid[ing] the bus which was required to drop-off geological samples before dropping of[f]" these employees. (*Id.* at 9–10.) The Post-Shift Activities last up to 75 minutes, with 15 minutes for the geological sample drop-off and sixty minutes for the other activities. (*Id.* at 10.) Both the "Pre-Shift Activities and the Post-Shift Activities occurred off-the-clock and without compensation." (*Id.*)

Lastly, under the rounding policy, the time recorded for hourly non-exempt Stillwater employees was "rounded to reflect their scheduled shifts rather than the actual hours worked." (*Id.* at 10.) "In practice, Stillwater reported the scheduled shift time as the time worked, regardless of the additional time spent performing Pre-Shift Activities and Post-Shift Activities." (*Id.*)

## LEGAL STANDARD

Under the FLSA, employees are afforded a private right of action to sue an employer for violations of the Act for and on behalf of themselves and "other employees similarly situated." 29 U.S.C. § 216(b). "[N]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed with the court in which such action is

4

brought." *Id.* In other words, an employee wishing to join the collective action must "'opt-in' by filing a written consent with the court." *Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 989 (C.D. Cal. 2006) (citing 29 U.S.C. § 216(b)). District courts "may authorize the named § 216(b) plaintiffs to send notice to all potential plaintiffs, and may set a deadline for those plaintiffs to 'opt-in' to the suit.'" *Id.*; *see Hoffmann-LaRouche, Inc. v. Sperling,* 493 U.S. 165, 169 (1989).

"It is within the discretion of the district court to determine whether a certification of a § 216(b) collective action is appropriate." *Edwards*, 467 F. Supp. 2d at 989. "Although 'similarly situated' has not been defined by the Supreme Court or the Ninth Circuit, the majority of courts within the Ninth Circuit have adhered to a two-step certification procedure for FLSA collective actions." *Baker v. Sunburst Consulting, Inc.*, 2017 WL 3271727, at *3 (D. Mont. July 6, 2017) (collecting cases). The first step is "fairly lenient," only requiring a court to decide "whether the potential class should be given notice of the action" "based primarily on the pleadings and any affidavits submitted by the parties." *Edwards*, 467 F. Supp. 2d at 990 (quoting *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004)). Consistently, this step is referred to as the "notice stage," *Leuthold*, 224 F.R.D. at 467, and "typically results in conditional class certification," *Edwards*, 467 F. Supp. 2d at 990. "The plaintiff carries the burden of showing that members of the proposed class are similarly situated." *Kellgren v.*

*Petco Animal Supplies, Inc.*, 2015 WL 5167144, at *2 (S.D. Cal. Sept. 3, 2015). Although a "[p]laintiff need not show his position is or was identical to the putative class members' positions," "unsupported assertions of widespread violations are not sufficient to meet [the p]laintiff's burden." *Edwards*, 467 F. Supp. 2d at 990 (internal quotation marks omitted). The second step of the certification process, "generally prompted by a motion for decertification," requires a stricter standard and "occurs at the close of discovery." *Baker*, 2017 WL 3271727, at *3. Only the first step is required at this point.

Once a collective action is conditionally certified, a court can facilitate the opt-in process by authorizing a plaintiff to disseminate notice of the action to potential collective action members. *Chetwood v. T-Mobile USA, Inc.*, 2020 WL 1689730, at *2 (W.D. Wash. Apr. 7, 2020) (citing *Genesis Healthcare Corp. v. Symczyk*, 596 U.S. 66, 75 (2013)). Specific discovery is authorized for FLSA notice purposes to determine the names and addresses of the putative collective action members. *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 539 (N.D. Cal. 2007) (citing *Hoffmann-LaRoche Inc.*, 493 U.S. at 169).

ANALYSIS

## I.   Certification

At this stage, "[t]he determination of whether proposed collective action members are similarly situated is fact-specific. Courts use their discretion when

6

examining the particular allegations and relevant circumstances of a case to determine whether a plaintiff sufficiently demonstrated potential members are similar." *Kellgren*, 2015 WL 5167144, at *3 (internal citation omitted). A plaintiff "need present the court with 'nothing more than substantial allegations that putative class members were together the victims of a single decision, policy, or plan' in order to make a sufficient showing for certification." *Bower v. Cycle Gear, Inc.*, 2015 WL 2198461, at *1 (N.D. Cal. May 11, 2025) (quoting *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)).

Plaintiffs argue that they and the putative collective plaintiffs are similarly situated because "they were all subject to Stillwater's uniform policies of failing to compensate them for all hours worked, including overtime compensation, failing to include all renumeration into their regular rates of pay for purposes of determining their overtime rates of pay, and rounding Plaintiffs and Putative Collective Members time to reflect their scheduled hours." (Doc. 22 at 13.) Plaintiffs insist that these policies and practices that allegedly violate the FLSA applied "regardless of the location at which" the putative collective action members "primarily worked." (*Id.* at 14.) On the other hand, Stillwater argues that because "Plaintiffs seek to conditionally certify an exceptionally broad class including all hourly, non-exempt employees who worked for Stillwater any time during the last three years,

7

regardless of their job title or duties, and regardless of the location where they worked," they fail to meet their burden at the notice stage. (Doc. 24 at 13.)

Plaintiffs submitted declarations of Dammann, (Doc. 22-2), and two former employees: Jason Baier, (Doc. 22-3), and Craig Gregie, (Doc. 24-4). Stillwater submitted the declaration of Brandi Pierce, its Human Resources Manager. (Doc. 24-1.) Based on the current record, Plaintiffs have the better argument.

As a threshold matter, Stillwater takes issue with the declarations of Dammann, Baier, and Gregie because they are "boilerplate." (Doc. 24 at 6, 17, 19.) At the notice stage, however, "the use of 'similarly worded or even cookie cutter declarations' is not necessarily fatal." *Casarotto v. Exploration Drilling, Inc.*, 2015 WL 6080755, at *4 (quoting *Bollinger v. Residential Capital, LLC*, 761 F. Supp. 2d 1114, 1120 (W.D. Wash. 2011)). Indeed, given the purposes of FLSA preliminary certification and the fact that Plaintiffs have yet to conduct discovery, *id.*, these declarations are appropriately considered.

Next, Stillwater argues that Plaintiffs fail to meet even the lenient standard required at the notice stage. Although Stillwater is correct that at this stage, a plaintiff's slight burden still "'does require some evidentiary support,'" (Doc. 24 at 9–10 (quoting *Bishop v. Petro-Chemical Transport, LLC*, 582 F. Supp. 2d 1290, 1296 (E.D. Cal. 2008)), that burden is met here.

8

Stillwater points out that "non-exempt employees [at Stillwater] work more than 100 distinct jobs," (Doc. 24 at 14; Doc. 24-1 at ¶ 5 (listing "113 distinct jobs")), which include administrative assistants, lab techs, and custodians whose job duties and requirements are distinct from miners, (Doc. 24 at 15–16; Doc. 24-1 at ¶ 6). For example, a Stillwater custodian never works underground and primarily performs duties "in a PPE free zone," which means "a hard hat, sleeves, lamp, gloves, self-rescuer, or respirator" are not required unless they leave the PPE free zone. (Doc. 24-1 at ¶ 6.) Stillwater also highlights that such job duties also differ based on mine location, noting that "while all non-exempt employees ride a bus to the East Boulder Mine, none of the non-exempt employees at the Columbus location ride the bus[.]" (*Id.* ¶ 9.) Further, some of the non-exempt employees are subject to a collective bargaining agreement, while others are not. (*Id.* at ¶ 4). If subject to a collective bargaining agreement, one agreement covers certain employees at Stillwater's Nye and Columbus mines, while the other covers certain employees at Stillwater's East Boulder mine in McLeod. (*Id.*) And it is those agreements along with job classification that determine how a non-exempt employee's incentive pay is calculated. (*Id.* at ¶ 10.)

Even if Stillwater is correct on all fronts, Plaintiffs have pled, and none of the declarations contradict, that Stillwater paid its hourly non-exempt employees

under a centralized pay structure, which includes nondiscretionary bonuses, and applies a uniform overtime-calculation methodology, in violation of the FLSA. For example, even if the incentive pay calculation differs based on job title and whether the employee is subject to a collective bargaining agreement, (Doc, 24-1 at ¶ 10), Stillwater's pay structure includes nondiscretionary bonuses for its hourly non-exempt employees across the board.  Regardless of how the incentive pay is calculated, the alleged FLSA violation is the failure to properly include any extra compensation in the calculation of the overtime rate of pay.  (Doc. 22 at 7–8.) Thus, at this stage, such pay policies appear to "bind[] the named plaintiffs and the potential class members together as victims[,]" *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 926 (D. Ariz. 2010) (internal quotation marks omitted), across job classifications and mine locations.  Plaintiffs, declarants Baier and Gregie, and putative collective action members, are hourly, non-exempt Stillwater employees. (Doc. 1 at ¶¶ 2–3; Doc. 22-2 at ¶ 2; Doc. 22-3 at ¶ 2; Doc. 22-4 at ¶ 2.)  Each such employee received nondiscretionary bonuses, (Doc. 22-2 at ¶ 17; Doc. 22-3 at ¶ 17; 22-4 at ¶ 17), and the same overtime-calculation methodology applied to their pay, (Doc. 22-2 at ¶¶ 18–19; Doc. 22-3 at ¶¶ 18–19; Doc. 22-4 at ¶¶ 18–19).  Each declarant states that he knows of other Stillwater employees, both former and current, who were also paid the "additional compensation" they received.  (Doc. 22-2 at ¶ 19; Doc. 22-3 at ¶ 19; Doc. 22-4 at ¶ 19.)  Thus, the pleadings and

declarations contain "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan," *Bower*, 2015 WL 2198461, at *1 (quoting *Thiessen*, 267 F.3d at 1102), sufficient to establish that Plaintiffs and putative collective action members are similarly situated.

## II.    Proposed Notice

Plaintiffs seek authorization to disseminate their "Notice of Unpaid Overtime Collective Action Lawsuit" (the "Notice") to all potential collective action members. (Docs. 21, 22-1 at 1–5 (Notice).) The Notice includes a Consent Form for putative collective action members to fill out and return. (Doc. 22-1 at 6–7.) To effectuate such notice, Plaintiffs "request the Court order Stillwater to produce the names, current or last known physical addresses, email addresses (both personal and work), and telephone numbers for all Putative Collective Members and to allow notice to be disseminated through U.S. Mail, Email, and text message," (Doc. 22 at 15), and seek authorization to send a "reminder notice by mail, email, and text message half-way through the sixty (60) day opt-in period," (*id.* at 16). Plaintiffs' Notice is authorized as modified below and their request for production is granted.

### a.  Content of Notice and Consent Form

Courts have "both the duty and the broad authority to exercise control" over FLSA collective actions, including the dissemination of a court-authorized notice.

*Hoffman-La Roche Inc.*, 493 U.S. at 171. "By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative." *Id.* at 172. Here, Stillwater argues that Plaintiffs' proposed notice should be rejected due to six "flaws," and that Plaintiffs should not be authorized to send any notice via text message. (Doc. 24 at 20–26.) More specifically, Stillwater argues that the notice (1) too broadly defines the collective action members; (2) overemphasizes Plaintiffs' position "by spelling it out twice in detail, while minimizing Stillwater's position;" (3) inappropriately advises collective action members of their right to counsel of their choice only after "informing them that they 'must' sign and return the consent form to [] Plaintiffs' national counsel's law firm" and does not advise collective action members that they will also "be represented by the Bechtold Law Firm;" (4) "Geisinger" is used in Section 6 of the Notice and "Stillwater is unaware of the identity of 'Geisinger'"; (5) the section informing potential collective action members that they should not speak with Stillwater attorneys regarding the case should be contextualized to apply only to members who agree to join the suit; and (6) the Notice fails to include a disclaimer that collective action members may recover nothing. (Doc. 24 at 20–24.) Minor modification of the notice is ultimately warranted.

However, some of Stillwater's objections lack merit. As to Stillwater's first concern, Stillwater argues that "[i]f an employee never worked more than 40 hours

12

in a given workweek, he or she should not be part of the class." (Doc. 24 at 21.) But, Plaintiffs allege recorded hours are unrepresentative of actual time work under the rounding policy and do not compensate for Pre- and Post-Shift Activities under the pre/post shift off-the-clock policy. Thus, such a limitation on the putative collective action members is not appropriate here. As to Stillwater's third concern regarding right to counsel, the Notice is sufficient as written. Following a paragraph that explains the opt-in process, the Notice, in a stand-alone sentence, states, "You may also hire an attorney of your choice." (Doc. 22-1 at 4.) This is sufficient to notify potential collective action members of their rights without confusing the issue. *See Adams*, 242 F.R.D. at 541 (rejecting argument that notice must describe an option for potential plaintiffs to provide their own counsel because it "would lead to confusion, inefficiency and cumbersome proceedings.")

Stillwater also takes issue with the Notice providing the name of and contact information for only lead counsel and not for local counsel. Avoiding confusion is the guidepost here. *Cf. Zeman v. Twitter*, 747 F. Supp. 3d 1275, 1289 (N.D. Cal. 2024) (rejecting argument that defense counsel must be included on notice because "[i]ncluding additional lawyers only creates the potential for confusion"). Lead counsel is identified in three sections of the Notice and in two sections of the Consent Form. In Section 4 of the Notice, lead counsel's firm is named and their address is provided for the purpose of mailing the signed Consent Form. (Doc. 22-

13

1 at 3.) In Section 7 of the Notice, lead counsel are identified by name as "Plaintiffs' attorneys" and potential collective action members attorneys if they "choose to join this suit" and states that their "contact information is listed below." (*Id.* at 4.) In Section 8 of the Notice, lead counsel is again named with their contact information provided so potential collective action members can "receive more information." (*Id.* at 4–5.) Section 3 of the Consent Form states, "I designate the law firms and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH, PLLC, and BECHTOLD LAW FIRM, PLLC as my attorneys to prosecute my wage claims." (*Id.* at 6.) The final page of the Consent Form provides lead counsel's mailing address to return the form. (*Id.* at 7.) The Notice names lead counsel for the purposes of providing further information and returning the Consent Form. Including Bechtold Law Firm in these sections is unnecessary and could be confusing. Bechtold Law Firm is included in the Consent Form as representation. Thus, read together, the Notice and the Consent Form accurately inform potential collective action members of their representation.

Stillwater's remaining objections warrant consideration and modification of the Notice and Consent Form. Both Stillwater's second concern regarding minimization of its position and sixth concern regarding improper description of potential financial gain warrant modification. To ensure that the Notice is both accurate and informative, putative collective action members must be informed

14

that Stillwater asserts, as a defense, its entitlement to offset and recoupment of compensation and benefits.  (*See* Doc. 26 at 21.)  As to Stillwater's fourth concern regarding the anti-retaliation section of the Notice, Plaintiffs "agree to remove the reference to 'Geisinger' and amend Section 6 to state: 'Stillwater Cannot Blackball Against You for Participating in this Lawsuit." (Doc. 27 at 11.)  Such removal and amendment are appropriate here and in the first section of the Consent Form.[2]

Stillwater's fifth concern regarding communication with Stillwater is also valid.  Section 7 states "[i]f you choose to join this suit and agree to be represented by Plaintiffs' attorneys, your attorneys in this action will be" and then provides the attorney information.  (Doc. 22-1 at 4.)  In the next paragraph, the Notice states "[y]ou should not contact Stillwater to discuss this lawsuit.  You should also not talk with Stillwater's attorneys about the case.  Any information provided to Stillwater or its attorneys can be used against you and the other Putative Class Members attempting to recover their unpaid overtime wages." (*Id.*)  Stillwater argues that because this paragraph does not contain "any limitation explaining that advice applies only" to those who join the suit, it improperly tells "current Stillwater employees . . . [that] they cannot speak to their employer about their wages or this case, including employees who may . . . desire to assist Stillwater in

---

[2] The Consent Form states, "I consent, agree, and opt-in to the lawsuit filed against Geisinger . . . ." (Doc. 22-1 at 6.)

its defense." (Doc. 24 at 23.) Plaintiffs argue that the "if you join" language contained in the preceding paragraph is sufficient to put potential collective action members on notice that the communication limitation only applies if they join the suit. (Doc. 27 at 11.) Although Plaintiffs are correct that it is a "settled principle that once individuals opt in, . . . direct employer contact regarding the litigation is inappropriate," (*Id.* (citing *Blair v. Barrett Fin. Grp. LLC*, 2025 WL 69919, at *3 (D. Ariz. Jan. 10, 2025)), their language is not clear here. That ambiguity can be cured by adding the "if you join" language to the beginning of the second paragraph under Section 7.

### b. Means of Sending Notice

Stillwater argues that because it is invasive and Plaintiffs have not sufficiently explained its necessity, notice by text message should not be authorized here. Plaintiffs, on the other hand, argue that in consideration of "modern communication practices (and preferences) and the FLSA's remedial purpose," authorizing notice by text message is both "practical and appropriate." (Doc. 27 at 12.) Stillwater has the better argument.

In their declarations, Dammann, Baier, and Gregie state that because they "work in remote locations . . . email and text message notice would properly inform the [other putative collective action members] about their potential claims against Stillwater." (Doc. 22-2 at ¶ 21; Doc. 22-3 at ¶ 21; Doc. 22-4 at ¶ 21.)

16

However, Plaintiffs do not "provide a specific reason that text message is necessary." *Hanigan v. OpSec Security, Inc.*, 2022 WL 4465518, at *6 (D. Idaho Sept. 26, 2022) (explaining that "text messaging is an invasive form of notice distribution that should not be used unless there is good reason"). Although the putative collective action members may work in remote locations, Plaintiffs have not provided an explanation as to why a combination of regular mail and email is insufficient to notify the putative members. *Rittman v. Amazon, Inc.*, 2024 WL 4932745, at *6 (W.D. Wash. Dec. 2, 2024) (denying notice by text message where plaintiff did not "suggest[] that mail and e-mail together will be ineffective"). Further, even in modern times, it is "more common to not allow text message distribution when parties have not agreed to the use of text message." *Hanigan*, 2022 WL 4465518, at *6 (collecting cases). Accordingly, text-message notice is not appropriate here.

### c. Reminder

Plaintiffs request authorization to send a reminder notice half-way through the 60-day opt-in period to "ensure" putative collective action members "actually receive notice and have an opportunity to make an informed decision about whether to join this case." (Doc. 22 at 16.) Because Stillwater's response does not address the reminder notice, (*see generally* Doc. 24), and "the initial notices may

be lost before or after receipt by potential [collective action] members," *Baker*, 2017 WL 3271727, at *6, the reminder request is authorized.

### d. Production

Lastly, Plaintiffs request Stillwater "produce the names, current or last known physical addresses, email addresses (both personal and work), and telephone numbers for all Putative Collective Members." (Doc. 22 at 15.) Because Stillwater's response does not address such production and "specific discovery is authorized for FLSA notice purposes to determine the names and addresses of the putative collective action members[,]" *Adams*, 242 F.R.D. at 539 (citing *Hoffmann-LaRoche Inc.*, 493 U.S. at 169), Plaintiffs' request is granted as to each category of information except telephone numbers.

### CONCLUSION

Based on the foregoing, IT IS ORDERED that Plaintiffs' motion for conditional certification and notice, (Doc. 21), is GRANTED as follows.

1.  The proposed collective action is CONDITIONALLY CERTIFIED.

2.  The Notice and Consent Form are APPROVED as modified in the attached Notice and Consent Form. The initial Notice may only be sent by regular mail (not by email or text message). The reminder Notice may be sent by regular mail or email (not by text message).

18

3. Within 7 days of this Order, either party may file an objection to the modified Notice and Consent Form attached to this Order.

    a. **If there are no objections**, the Notice and Consent Form are APPROVED and within 7 days of the objection deadline, Stillwater shall provide Plaintiffs' counsel with the names, current or last known physical addresses, and email addresses (both personal and work) of all putative members of the conditionally certified class. Class Counsel is AUTHORIZED to send the Notice of the conditionally certified collective action to all putative members within 14 days of the objection deadline. Plaintiffs are ORDERED to file a notice in this action that such notices have been sent.

    b. **If objections are filed**, the Court will rule on the objections, and within 7 days of that Order, Stillwater shall provide Plaintiffs' counsel, the names, current or last known physical addresses, and email addresses (both personal and work) of all putative members of the conditionally certified class. Class Counsel is AUTHORIZED to send the Notice of the conditionally certified collective action to all putative members

19

within 14 days of that Order.  Plaintiffs are ORDERED to file a notice in this action that such notices have been sent.

4.  Class Counsel is AUTHORIZED to send a Reminder Notice 30 days after the initial Notice was sent.  Plaintiffs are ORDERED to file a notice in this action indicating the dates the Reminder Notices were sent.

5.  FLSA collective class members must opt-in within 60 days of the date of the Initial Notices are mailed.  No opt-in is permitted after that deadline.

DATED this _____ day of May, 2026.

_____
Donald W. Molloy, District Judge
United States District Court